## MARION G. OLSON *v.* BRISTOL-BURLINGTON HEALTH DISTRICT
## (AC 24955)

Bishop, DiPentima and Berdon, Js.

Argued October 26, 2004—officially released January 18, 2005

*Judith D. Meyer*, for the appellant (plaintiff).

*Gabriel J. Jiran*, with whom, on the brief, was *Gary S. Starr*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Marion G. Olson, appeals from the judgment of the trial court rendered in favor of the defendant, the Bristol-Burlington health district, after the court granted the defendant's motion to strike the plaintiff's complaint. At issue is whether the allegations contained in the plaintiff's complaint were adequate to state a cause of action for negligent infliction of emotional distress. Because we answer that question in the affirmative, we reverse the judgment of the trial court.

The following procedural facts are relevant to our discussion. On April 28, 2003, the plaintiff filed a complaint in which she alleged the following facts. The

plaintiff had been employed by the defendant, a district department of health, as a public health nurse, working primarily in schools within the district. She has multiple sclerosis, a progressive and debilitating disease, and, as a consequence, she suffers from fatigue and severe, loss of cognitive functioning. The defendant was aware of her medical condition during her employment and the fact that she had requested accommodations due to the disabilities resulting from her illness. During calendar years 2000 and 2001, she had made several errors in nursing care, some of which could have had severe, deleterious effects on the health of students. She had admitted to the defendant several cognitive difficulties that impaired her ability to function as a nurse. On April 26, 2001, an employee of the defendant, Patricia Checko, conducted a predisciplinary conference in the course of her employ to determine what disciplinary measures to administer to the plaintiff because of her errors in nursing care. Upon hearing the plaintiff admit to her employment failings, Checko falsely accused the plaintiff of intentionally falsifying a student's medical record, intentionally violating standard nursing practices and attempting to conceal her errors. In the course of terminating the plaintiff's employment on May 2, 2001, Checko unreasonably accused the plaintiff of falsifying records, egregious misconduct and deliberate indifference to the health of students under her care. Checko and other employees of the defendant knew that the plaintiff suffered from multiple sclerosis, and they knew or should have known that the progress of her condition was likely to have affected her work performance.

The plaintiff alleged that Checko knew or should have known that accusing the plaintiff of wilful employment related misconduct in the course of terminating her employment was likely to cause her severe emotional distress and that the resulting emotional distress was likely to be sufficiently severe to cause physical illness

or exacerbate her condition. Finally, the plaintiff alleged that she did, in fact, suffer severe emotional distress as a result of Checko's conduct during the termination process.

In response to the plaintiff's complaint, the defendant filed a motion to strike in which it claimed that "[t]he allegations in the complaint are insufficient to support her claim of negligent infliction of emotional distress because she has not identified any extreme or outrageous behavior that occurred during the termination of her employment." Agreeing with the defendant that the conduct alleged by the plaintiff's complaint was not extreme or outrageous and opining that the allegations of negligence contained in the complaint were insufficient to state a claim for negligent infliction of emotional distress, the court granted the defendant's motion to strike. Thereafter, the court rendered judgment in favor of the defendant, and this appeal followed.

"We begin by setting out the well established standard of review in an appeal from the granting of a motion to strike. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [defendant's motion] is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citations omitted; internal quotation marks omitted.) *Commissioner of Labor* v.

*C.J.M. Services, Inc.*, 268 Conn. 283, 292, 842 A.2d 1124 (2004).

As noted by the court, Connecticut recognizes a cause of action for negligent infliction of emotional distress. See *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978). In general, to prevail on such a claim, a plaintiff must prove that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress, the plaintiff's distress was foreseeable, the emotional distress was severe enough that it might result in illness or bodily harm, and, finally, that the defendant's conduct was the cause of the plaintiff's distress. *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 446, 815 A.2d 119 (2003). The foreseeability requirement in a negligent infliction of emotional distress claim is more specific than the standard negligence requirement that an actor should have foreseen that his tortious conduct was likely to cause harm. *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 446–47, 782 A.2d 87 (2001). In order to state a claim for negligent infliction of emotional distress, the plaintiff must plead that the actor should have foreseen that her behavior would likely cause harm of a specific nature, i.e., emotional distress likely to lead to illness or bodily harm. Id. Such a claim in the employment context arises only when it is "based upon unreasonable conduct of the defendant in the termination process" rather than in an ongoing employment relationship. (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 88, 700 A.2d 655 (1997). Finally, to prevail on a claim of negligent infliction of emotional distress arising in the employment setting, a plaintiff need not plead or prove that the discharge, itself, was wrongful, but only that the defendant's conduct in the termination process created an unreasonable risk of emotional distress. Id., 88–89.

Our review of the court's decision on the motion to strike leads us to conclude that the court based its decision on two factors. First, the plaintiff did not plead sufficient facts to state a claim that Checko should have realized that her accusations against the plaintiff in conjunction with her discharge would have created an unreasonable risk of emotional distress that might result in illness or bodily harm to the plaintiff. Second, the defendant's alleged conduct was not extreme or outrageous. As to its first basis, the court wrote: "The fact that there were other matters relating to poor performance that were raised cannot be relied upon to show that her employer should have realized that the discussion of other matters relating to performance issues would create an unreasonable risk of causing the plaintiff emotional distress that might result in illness or bodily harm." We disagree. A fair reading of the complaint establishes that the "other matters" to which the court referred consisted of the plaintiff's allegations that Checko, aware of the nature and deterioration of the plaintiff's condition and of the plaintiff's acknowledgement that her condition made her incapable of performing her nursing function, nevertheless falsely accused the plaintiff of wilful misconduct. Contrary to the conclusion reached by the court, we believe that such allegations, if proven, constitute a viable claim for negligent infliction of emotional distress.

As to the second basis for the court's decision, which was that the defendant's alleged conduct was neither extreme nor outrageous, we believe that the court incorrectly applied a behavioral standard for wilful infliction of emotional distress to a complaint founded solely on negligence. In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the

conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Ancona* v. *Manafort Bros., Inc.*, 56 Conn. App. 701, 711, 746 A.2d 184, cert. denied, 252 Conn. 953, 749 A.2d 1202 (2000). As to the character of the behavior, "extreme and outrageous" conduct is understood to mean "conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 254 n.5, 510 A.2d 1337 (1986). Thus, a pivotal difference between claims for emotional distress based on intentional conduct and those based on negligent conduct is that an essential component of an intentional infliction claim is that the defendant's alleged behavior must be extreme and outrageous. A claim based on the negligent infliction of emotional distress requires only that the actor's conduct be unreasonable and create an unreasonable risk of foreseeable emotional harm. Thus, to survive a motion to strike, a complaint alleging negligent infliction of emotional distress need not include allegations of extreme and outrageous behavior.

This distinction is not novel. See, e.g., *Benton* v. *Simpson*, 78 Conn. App. 746, 756, 829 A.2d 68 (2003); *Ancona* v. *Manafort Bros., Inc.*, supra, 56 Conn. App. 711. In *Benton*, this court noted: "The difference between the two torts of inflicting emotional distress is significant. As noted by Associate Justice David M. Borden recently, it is less onerous to prove the tort of negligent infliction of emotional distress. '[W]ith respect to proof of the defendant's tortious conduct, the plaintiff has a more difficult burden when the defendant's state of mind is intentional, rather than negligent. . . . [W]here the defendant's state of mind is purpose-

fully to inflict emotional distress on the plaintiff, the plaintiff may not recover unless the defendant's conduct in pursuance of that intent is also extreme and outrageous; but where the defendant did not have such a malevolent state of mind, but merely was negligent, the plaintiff may recover without having to prove that the conduct engaged in by the defendant was extreme and outrageous.'" *Benton* v. *Simpson*, supra, 756–57, quoting *Carrol* v. *Allstate Ins. Co.*, supra, 262 Conn. 452 (*Borden, J.*, concurring).[1] Although, as noted by Justice Borden in *Carrol*, it may be anomalous that the burden of surmounting the behavioral bar is higher for a plaintiff attempting to prove intentional infliction of emotional stress than for one seeking redress for negligent infliction of emotional distress, our function is not to rationalize the law but to follow it.[2]

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

---

[1] We recognize that in *Muniz* v. *Kravis*, 59 Conn. App. 704, 757 A.2d 1207 (2000), this court opined that "[t]he elements of negligent and intentional infliction of emotional distress differ as to the state of mind of the actor and not to the conduct claimed to be extreme and outrageous." Id., 709. We note that because *Muniz* involved a claim of intentional and not negligent infliction of emotional distress, our comment concerning the distinction between claims founded on intent and negligence was mere dicta. Additionally, although we do not foreclose the possibility that there may be a case in which the same behavior may fairly be seen as extreme and outrageous if intentional and only unreasonable if unintentional, we do not believe the dicta of *Muniz* should be applied beyond its boundaries. Rather, we find guidance in Justice Borden's elucidation of the difference between the two types of claims.

[2] We note with respect to this apparent anomaly that a defendant found culpable for intentional infliction of emotional harm is susceptible to punitive damages while a negligent defendant causing foreseeable emotional harm is liable only for compensatory damages. Cf. *Carrol* v. *Allstate Ins. Co.*, supra, 262 Conn. 444. Thus, although a successful plaintiff must prove more egregious behavior in an intentional case than in one founded solely on negligence, the plaintiff's potential recovery in an intentional case is correspondingly greater.